OSMERS, RESPONDENT, *v.* FUREY ET AL., APPELLANTS.

(No. 2,105.)

(Submitted May 5, 1905. Decided July 3, 1905.)

*Landlord and Tenant—Eviction—Actual and Constructive— Abandonment — Justification—Opinion Evidence—Claim and Delivery—Order of Proof—Burden of Proof—Counterclaims—Instructions—Damages—New Trial—Separable Issues.*

Landlord and Tenant—Actual and Constructive Eviction—Justification—Abandonment.

1. Where defendant entered on premises, leased by him to plaintiff, and proceeded to build an addition to the rear of the building without consulting the lessee, in the course of which operations the steps from the rear into the house were removed, thereby preventing

access from the back yard, and a chimney used by lodgers in the basement destroyed, compelling them to seek lodging elsewhere, while other lodgers left the premises by reason of the noise incident to the work, the plaintiff, having been actually evicted from a part of the premises and constructively from the rest by defendant's action, was justified in abandoning the building, and discharged from any obligation to pay rent for the remainder of the term.

Landlord and Tenant—Eviction—Defense to Action for Rent.

2.  Eviction by the landlord is a complete defense to an action for rent, the consideration for the agreement having failed by the wrongful act of the landlord in depriving the tenant of the beneficial use of the property.

Opinion Evidence—Knowledge of Witness—Competency.

3.  Plaintiff testified, in an action in claim and delivery to recover furniture wrongfully seized by her landlord to satisfy a claim for rent, that she purchased most of it from a prior lessee, about fourteen months before the seizure, for $1,600, and had added to it new furniture to the amount of $400; that she knew the value of the furniture, and that it was worth $2,000; that she had once before purchased similar property; that none of it had deteriorated appreciably by use, and that it was still worth the purchase price to any one desiring to buy such property, whether in the leased house or not. *Held,* that the knowledge and experience thus evinced by her was sufficient to permit her to state her opinion.

Claim and Delivery—Measure of Damages—Market Value.

4.  The amount plaintiff in claim and delivery may recover, in case a redelivery cannot be had, is the market value of the property when the taking occurred or the wrongful detention began.

Claim and Delivery—Measure of Damages—Cost Price.

5.  In ascertaining the market value of personalty in claim and delivery, the cost price may be considered as one fact tending to establish it.

Claim and Delivery—Order of Proof—Burden of Proof—Justification—Rebuttal—Practice.

6.  In an action in claim and delivery for furniture of plaintiff seized by defendant under an alleged lien for rent, it was only incumbent on plaintiff, in making her case in chief, to prove ownership of the furniture, and the taking and detention by defendants against her consent, the burden of justification being on defendants, and, after introduction of their evidence, plaintiff could in rebuttal show the eviction, and that no rent was due.

Claim and Delivery—Counterclaims—Money Judgment—Instructions.

7.  *Held,* in an action in claim and delivery for furniture of plaintiff, seized by defendant lessor under an alleged lien for rent, wherein defendant set up a counterclaim for rent, damages to the leased premises, etc., that, as a claim for a money judgment, whether arising out of the transaction set forth in the complaint or not, in no way tended to defeat or diminish plaintiff's right to recover possession of the property, an instruction to disregard evidence in support of defendant's counterclaim, except so far as showing rent due at the time of the taking, which would be a justification therefor, was correct.

Claim and Delivery—Cause of Action—Subject of the Action.

8.  The transaction set forth in the complaint, in an action in claim and delivery for furniture of plaintiff lessee seized by defendant lessor under an alleged lien for rent, being the wrongful taking of the property, the cause of action alleged in defendants' counterclaim

for water rent, plumbing, etc., or damages to the building etc., did not arise out of the transaction, nor was it connected with the subject of the action.

Motion to Strike Out Counterclaim.
   9.  On the filing of an answer improperly interposing a counterclaim, plaintiff's motion to strike out the counterclaim should have been allowed.

Instructions.
   10.  Where instructions, taken as a whole, fairly state the law applicable to a case, appellant has no cause to complain.

Claim and Delivery—Judgment—Damages—Remittal—Effect—New Trial.
   11.  In an action in claim and delivery for property alleged to have been wrongfully seized by defendant, there was no evidence to sustain a finding for damages for the taking, and plaintiff remitted damages awarded by the verdict, judgment being entered in the alternative for the return of the property or for the value thereof. *Held* that, as defendants secured all the relief to which they were entitled, the fact that the usual course in such cases was not pursued was not sufficient ground for a new trial.

Claim and Delivery—Separable Issues.
   12.  Where an issue as to damages is clearly separable from the other issues in a case, the supreme court, in order to correct a judgment including them, will order a new trial of such issue only.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

ACTION by Dora Osmers against James B. Furey, J. H. Steele and others. Judgment for plaintiff, and defendants appeal from it and an order denying them a new trial. Affirmed.

STATEMENT OF THE CASE BY THE JUSTICE DELIVERING THE OPINION:

Action in claim and delivery to recover the possession of certain lodging-house furniture alleged to have been wrongfully taken from the plaintiff, and of the value, as averred, of $2,000, and for damages in the sum of $500, for that by the wrongful taking the plaintiff's business was destroyed, and she was put to great cost and expense.

The complaint is in the ordinary form. The defendants Furey, McGuigan, and Hughes filed a separate answer, putting in issue all the material allegations of the complaint. The answer of defendant Steele, after joining issue upon

these allegations, sets up two separate affirmative defenses. The first alleges, in substance, by way of justification, that the plaintiff was on July 30, 1901, the date of the alleged wrongful taking, the lessee of the defendant Steele, and as such was occupying a building belonging to the defendant, situate on lot 5, block 13, of the city of Butte, with one-half of a small yard in the rear thereof, and that she had said property therein in her possession; that the term of the lease was for twenty-two months from January 1, 1900; that the writing provided that the rent should be due and payable in advance on the first day of each month in installments of $150; that it required the plaintiff, as additional rent, to pay all water, electric light, and fuel bills, and make all necessary repairs of pipes, wires, glass, etc., at her own expense, and, at the time such repairs were made, to inform the persons employed to furnish work and material for that purpose that the lessee only was chargeable for the price of them; and that in case any installment of rent was not paid at any time for three days after it should fall due, or if any of the covenants of the lease, were violated, the lease should be forfeited, and the lessor would be entitled to enter and take possession.

It is further alleged that, in order to secure the payment of the rent and the performance of the other conditions of the lease, there was a provision inserted therein giving the defendant a lien upon all the furniture described in the complaint, with authority to the defendant, when any installment of rent was due and unpaid for three days, to seize and sell it at public auction, as under execution, to satisfy defendant's claim for such rent. It is further alleged that on July 30, 1901, the plaintiff was in arrears on the payment of the July installment of rent, and also of the water rate, and that defendant on that day caused the property to be seized by the other defendants, and thereafter to be sold for the payment of such arrears, and also for the payment of the installment of rent due for the month of August and payable on the first of that month, and that the proceeds were applied toward the payment of the amounts thus due the defendant.

The third defense alleges, in substance, by way of counter-claim, that, though the rent for July was partly in arrears, the plaintiff attempted to vacate the building and remove the furniture therefrom; that she thereafter failed to pay any installment of rent for the remaining portion of the term; that the building had fallen into disrepair during plaintiff's occupancy, and had to be restored by defendant Steele at a cost to him of $209.21, which the plaintiff failed and refused to pay; that the furniture was sold under the terms of the lease by the defendants Furey, McGuigan, and Hughes, the sheriff of Silver Bow county and his deputies, for the defendant Steele; and that after he had credited upon the amount of the sale the cost of sale, the rent due, and the amount paid out by defendant Steele for repairs, there remained due him a balance of $169.55. For this sum judgment is demanded.

In her replication the plaintiff, besides averring a full performance on her part of all the conditions and covenants of the lease up to July 30, 1901, denied all the material allegations of the affirmative defense, and then alleged that on July 30, 1901, while the plaintiff was in the quiet and peaceable possession of the premises, the defendant Steele wrongfully entered thereon, and ousted and ejected her therefrom, and thereupon wrongfully, by his agents, the other defendants, seized the property as alleged in the complaint.

A trial upon the issues thus framed resulted in a verdict for the plaintiff that she was entitled to recover the possession of the property, that it was of the value of $1,500, and that she had suffered damage to the amount of $500 by reason of the wrongful taking. Judgment was entered that the plaintiff recover the possession of the property, or, in case return could not be had, that she recover from the defendants the sum of $1,500, the plaintiff having remitted the damages.

The provision of the lease upon which the defendants rely as the ground of their justification and as the basis of defendant Steele's counterclaim is as follows: "Said lessee does hereby give and grant to the said lessor a lien upon all of the furni-

ture, fixtures and other property now situate in said premises, owned and held by her on the first day of January, 1900, as described in Exhibit 'A' hereto attached, or which may thereafter be purchased, acquired or held by her and be placed by her in the said premises, for all unpaid amounts of rent hereinabove specified, now due, owing and unpaid, on and by virtue of the terms hereof. And in the event any installment of rent shall remain unpaid for a period of three days or longer after the same should have been paid, then the said lessor may take possession of the same and sell the same at public auction; if he so elect may direct the sheriff of the county of Silver Bow, Montana, to foreclose the said lien by posting, in accordance with the law governing the sale of personal property under execution." This appeal is from the judgment and an order denying the defendants a new trial.

*Mr. John J. McHatton,* and *Mr. W. E. Carroll,* for Appellants.

The plaintiff did not show any knowledge of the value of the property in question, and it was error for the court to overrule the objections to her testifying regarding the same. The price which she paid for the property, even though there had not been included in this price the lease and business, was not proper evidence of the value of the property at the time it was taken. She was not qualified to testify as to value. (*Story* v. *Maclay,* 3 Mont. 483; *Leggat* v. *Leggat,* 13 Mont. 190-194, 33 Pac. 5; *Dietrichs* v. *Lincoln etc. R. R. Co.,* 12 Neb. 225, 10 N. W. 718; *San Antonio & A. P. R. Co.* v. *Rubey,* 80 Tex. 172, 15 S. W. 1040; *St. Louis etc. Ry. Co.* v. *St. Louis Stock Yards Co.,* 120 Mo. 541, 25 S. W. 399; *Pittsburgh etc. Co.* v. *Vance,* 115 Pa. St. 325, 8 Atl. 764.) A cause of action arising out of the contract or transaction set forth in the complaint may be set up as a counterclaim. (Code of Civil Proc., secs. 690, 691; 19 Ency. of Pl. & Pr. 756, notes; *Davis* v. *Davis,* 9 Mont. 267, 273, 275, 23 Pac. 715; *Collier* v. *Erwin,* 3 Mont. 142, 145.)

The words "subject of the action" should be construed, not as relating to the thing itself about which the controversy has arisen, but as referring rather to the origin and ground of the plaintiff's right to recover or obtain the relief asked. (Code of Civil Proc., sec. 691; Moak's Van Sant on Pleading, 627, 628; Pomeroy's Code Remedies, secs. 767, 788, 789, notes, 791; *Deford* v. *Hutchison,* 45 Kan. 318, 25 Pac. 641, 11 L. R. A. 257.)

An answer alleging the circumstances under which the goods sued for came into defendant's possession, and that the defendant was entitled to at the time, and that the chattels were delivered to and sold by him as security for such debt, and that the same were held under the lien thus created by the pledge, and demanding judgment for such debt, states a counterclaim. (Pomeroy's Code Remedies, sec. 791; *Thompson* v. *Kessel,* 30 N.Y. 383.)

Defendant had a right to prove his lien, to defeat the plaintiff's alleged right of possession of the goods in controversy, and may therefore counterclaim and recover judgment for any amount due him under the lease. The counterclaim is certainly connected with the subject of the action. (*Deford* v. *Hutchison, supra; McArthur* v. *Green Bay & Miss. Canal Co.,* 34 Wis. 139, 146.) Counterclaim authorized by the Code embraces both setoff and recoupment, and is broader and more comprehensive than either. (*Vassear* v. *Livingston,* 13 N. Y. 248, 256.) Under the lease in this case, it was the duty of the plaintiff to pay the water, light and fuel charges, as part of the consideration therefor. (*Ellis* v. *Bradbury,* 75 Cal. 234, 17 Pac. 3.)

It was likewise the duty of the plaintiff to pay all damages occasioned by the plaintiff to the defendant. The damages claimed for injuries to the property occurred by reason of the removal of the property by the plaintiff from the premises. The defendant Steele had a lien. (Civil Code, sec. 3730 *et seq.;* 19 Am. & Eng. Ency. of Law, 2d ed., pp. 13, 14; 18 Id., pp. 650, 651, note 5, 654, 656.) Reservation of a lien on the tenant's

property in the lease does not waive statutory lien.   (*Ladner v. Balsley,* 103 Iowa, 674, 72 N. W. 787.)   A lien reserved by a lease is in the nature of a chattel mortgage.   (19 Am. & Eng. Ency. of Law, 2d ed., p. 328; Civil Code, sec. 3871; *Bennett Bros.* v. *Tam,* 24 Mont. 457, 62 Pac. 780.)

*Messrs. McBride & McBride,* and *Mr. James E. Murray,* for Respondent.

The matters set up by defendant, in his separate answer, purporting to constitute a counterclaim, do not, in any wise, arise, or grow out of, the transaction complained of by plaintiff.   The transaction concerning which plaintiff complains is the wrongful trespass and conversion of the furniture.   The so-called counterclaim of the defendant grows out of the alleged violation of certain covenants of a lease, and surely is not connected with, or does not arise out of, the transaction set forth in the complaint.   (*Loewenberg* v. *Rosenthal,* 18 Or. 178, 22 Pac. 603; *Bartlett* v. *Farington,* 120 Mass. 285; *Potter* v. *Lohse* (Mont.), 77 Pac. 419; *Lehmair* v. *Griswold,* 40 N. Y. Super. Ct. (8 Jones & S.) 100; *G. H. Mfg. Co.* v. *Hall,* 61 N. Y. 226; *Woodruff* v. *Garner,* 27 Ind. 4, 89 Am. Dec. 485; *Edgerton* v. *Page,* 20 N. Y. 283; *People* v. *Dennison,* 84 N. Y. 279.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court:

1. It will be observed that under the terms of the lease no lien was granted to secure the payment of any moneys which the lessor might be compelled to advance in order to put the property in repair either during or after the expiration of the term.   The lessor was authorized to re-enter and forfeit the lease if the plaintiff failed to pay any installment of rent according to its terms, or to make or pay for any necessary repairs; but there is no stipulation in the clause quoted, providing for a lien, that plaintiff's furniture should be seized and sold to reimburse the lessor for any outlay made by him in this regard. The lien was clearly imposed by the terms of the lease for the

purpose of securing the monthly installments of rent only, for there is no other stipulation as to the matters secured by it than the one quoted above.  Nor is there any agreement recited anywhere in the lease that the repairs were to be considered additional rent.  Such being the stipulation of the parties, the allegation of the defendant Steele, purporting to set forth in his separate answer the substance of the lease, to the effect that it was stipulated that the repairs done or to be done by plaintiff at her own expense were additional rents, finds no justification under the covenants or agreements therein.

Apart from the issue as to damages and the phase of the case presented by the counterclaim, which will be noticed hereafter, the only issue involved was whether the taking by the defendants was wrongful.  On this issue the jury found for the plaintiff, and we think properly so, upon the evidence, for, though there was some conflict as to whether there was still due a small balance on the July installment of rent, the evidence shows a decided preponderance in favor of plaintiff's contention that nothing was due on that or any other account.  The evidence tends to show also that about July 16th the defendant Steele, desiring to build some sort of an addition to the rear of the building, entered upon the back yard without consulting plaintiff, and began and continued his operations there until July 30th, when the plaintiff abandoned the place and sought to move out the furniture.  The workmen employed took away the steps, preventing access to the building from the yard, and excavated for the foundation of the new structure to the depth of several feet.  They also destroyed a chimney, which was used by plaintiff's lodgers in the basement, so that they were compelled to seek lodging elsewhere.  Other lodgers left because of the noise incident to the work.  So that not only was plaintiff justified in abandoning the premises on account of this action of Steele, but, the rent for July having been fully paid, the furniture could not be seized or held by Steele to enforce the payment of installments thereafter falling due.  The plaintiff was by these acts of Steele actually evicted from a part of

the premises, and constructively from the rest, and was at liberty to abandon possession, and thus be discharged from any obligation to pay rent for the remainder of the term.

Eviction by the landlord is a complete defense to an action for rent. (*York* v. *Steward,* 21 Mont. 515, 55 Pac. 29, 43 L. R. A. 125; *Kline* v. *Hanke,* 14 Mont. 361, 36 Pac. 454; 18 Am. & Eng. Ency. of Law, 2d ed., 300; 1 Taylor's Landlord and Tenant, 9th ed., 377.) The reason for the rule is that, the tenant having been deprived of the beneficial use of the property by the wrongful act of the landlord, the consideration for the agreement to pay rent has failed. (*Dyett* v. *Pendleton,* 8 Cow. 727.) This is common sense as well as law, for "the usual words of demise import a covenant for quiet enjoyment, which signifies that the tenant shall not be evicted by title paramount, and also that his possession shall not be disturbed by the acts or wrongful omissions of the lessor." (*York* v. *Steward, supra.*)

It is clear, therefore, that, upon the facts as found by the jury, the defendants were guilty of a trespass in seizing the furniture, and that the verdict as to plaintiff's right to the possession is fully supported by the evidence. These remarks dispose of the contention of appellants that the evidence is insufficient to sustain the verdict upon this issue.

2. The plaintiff testified that most of the furniture had been purchased by her from a prior lessee for $1,600 about fourteen months before the seizure, and that soon after her purchase she had added to it to the amount of $400 by the purchase of new furniture. She stated that she knew the value of the furniture, and that it was worth $2,000. The testimony was admitted, over the objection of defendants that it was incompetent in that the plaintiff had not shown sufficient knowledge to give her opinion, and that the purchase price paid by her did not in any way tend to show the market value of it. The witness stated further that she had been using the greater portion of the furniture for about fourteen months, having bought it when nearly new from one Eva Althoff, who had assigned the lease to her;

that it was in good condition; that she had once before pur-
chased property of the same sort; that she had added to it
about $400 worth of other furniture entirely new; that none
of it had deteriorated appreciably by use; and, after stating
the price she paid for it ($2,000), that it was still worth that
amount to any person who desired to buy property of that char-
acter, whether in the house, as when she purchased it, or not.
While the knowledge and experience thus evinced by her was
not extensive, still it was sufficient to permit her to state her
opinion. (*Holland* v. *Huston,* 20 Mont. 84, 49 Pac. 390;
*Emerson* v. *Bigler,* 21 Mont. 200, 53 Pac. 621; *Porter* v. *Haw-
kins,* 27 Mont. 486, 71 Pac. 664.)

In claim and delivery the purpose is to obtain possession of
the property, with damages for its detention. The value to be
found by the jury which the plaintiff may recover, in case a re-
delivery cannot be had, is the market value at the time the
taking occurred or the wrongful detention began. But in ar-
riving at this value it is always proper to take into considera-
tion the cost price as one fact tending to establish it. (*Angell*
v. *Hopkins,* 79 Cal. 181, 21 Pac. 729; *Luse* v. *Jones,* 39 N. J.
L. 708; *Jones.* v. *Morgan,* 90 N. Y. 4, 43 Am. Rep. 131;
*Boggan* v. *Horne,* 97 N. C. 268, 2 S. E. 224; *Roberts* v. *Dunn,*
71 Ill. 46; *Small* v. *Pool,* 30 N. C. 47; *McPeters* v. *Ray,* 85 N.
C. 462.) This evidence was admissible upon the same prin-
ciple as was evidence of the price which the property brought
at the sale made by the sheriff. Neither was conclusive, but
both were proper to be considered by the jury. Testimony of
other witnesses as to the value was objected to upon similar
grounds, but, for the reasons already stated, we think the
court committed no error in admitting it.

3. It was only incumbent upon the plaintiff, in making her
case in chief, to show her ownership of the furniture, and the
taking and detention by defendants against her consent. The
burden of justification was upon the defendants. When they
had introduced their evidence, the plaintiff had a right to rebut
their case by showing the eviction, and that nothing was due

on account of rent. Plaintiff's counsel, however, introduced as a part of their case in chief, the lease, and the evidence tending to show the eviction. The defendants objected to this evidence, on the ground that it was not relevant to any issue in the case. There is no merit in this objection. As already stated, the eviction by her landlord justified her abandonment of the leased premises, and discharged her from any obligation to pay any other installment of rent. While the proper order of proof was not pursued, still the evidence was relevant to the issues. Besides, the questions bringing out a portion of this evidence were put to the witness on redirect examination to give her an opportunity to explain statements brought out on cross-examination by counsel for defendants, to the effect that when the seizure was made by defendants she was engaged in moving the furniture from the house. The witness clearly had a right to explain.

4. Touching the counterclaim of the defendant Steele, the court, at the request of plaintiff, instructed the jury as follows: "Claims of water rent, plumbing, electric light bills, or damages of any nature to the building, or alleged breaches of any terms of the lease under which plaintiff held possession of defendant's premises, cannot in any wise be treated as proper matters of counterclaim, or treated as any defense to plaintiff's cause of action, except, however, the nonpayment of rent, which would constitute a defense or justify defendant's taking of said furniture; and you are instructed to disregard all testimony with reference to alleged breaches of the contract, other than the nonpayment of rent." In this instruction the jury were told in substance to disregard evidence tending to support the counterclaim of defendant Steele, except so far as it tended to show any rent due under the terms of the lease, and, if it were shown that rent was due at the time the defendants took the property, this would be a justification of the taking. Defendants complain that this was error.

The issue involved is the right of plaintiff to recover the possession of the property, or its value. The defendants could

not therefore be allowed to set up a counterclaim for a money judgment, and thus defeat the right of plaintiff to recover such possession. The nature of the action does not permit the interposition of such a defense. Under section 691 of the Code of Civil Procedure, providing for the interposition of counterclaims as a defense, such counterclaims only are allowed as tend in some way to diminish or defeat the plaintiff's recovery. A claim for a money judgment, whether arising out of the transaction set forth in the complaint or not, tends in no way to defeat or diminish the plaintiff's right of recovery of the possession of the property wrongfully taken from her.

If in a given case the counterclaim be established, and the plaintiff nevertheless be found to be entitled to recover the property, the result would be two independent judgments, the one in no way tending to modify or interfere with the other. If the defendant should succeed in establishing his right of possession to the property, as well as his counterclaim, he would have two independent judgments. The statute does not contemplate such a result. (Pomeroy's Code Remedies, section 643.) Besides, the cause of action alleged in the counterclaim did not arise out of the transaction set forth in the complaint as the foundation of plaintiff's claim, nor is it connected with the subject of the action. The transaction set forth is the wrongful taking of the property. While rent due for the use of the premises would have been a complete justification, the fact that it was due did not arise out of the wrongful seizure, nor was it in any way connected with it. It was the result of a breach of the lease, as were all the other items alleged as elements for defendant's claim. In *Collier* v. *Ervin,* 3 Mont. 142, it was said by this court: "The words in our statute, 'subject of the action,' should be construed, not as relating to the thing itself about which the controversy has arisen, but as referring rather to the origin and ground of the plaintiff's right to recover or obtain the relief asked." (See, also, *Potter* v. *Lohse,* 31 Mont. 91, 77 Pac. 419, and cases cited.)

Upon the filing of the answer, the plaintiff moved to have the counterclaim stricken out. The motion should have been sustained. The instruction excluded from the jury the consideration of all questions arising in connection with it, and was therefore correct. Whether the evidence was or was not sufficient to sustain the counterclaim is wholly immaterial.

Complaint is made of other instructions; but, taking them all together, we think they fairly state the law applicable to the case, and that the defendants have no just cause to complain of any of them.

5. The verdict of the jury fixed the value of the furniture at $1,500, and awarded the plaintiff damages to the amount of $500 on account of the taking. Upon entry of judgment the plaintiff remitted the damages, the judgment entered being in the alternative, for the possession of the property, or for $1,500 in case return could not be had. The defendants insist upon a reversal of the judgment and order because the judgment is not in strict accordance with the verdict. The evidence clearly does not sustain any finding for damages. If the judgment had included the amount so awarded, the district court would doubtless have given the plaintiff the option to remit the erroneous allowance or submit to a new trial, for the defendants would then have been entitled to it; but inasmuch as the same end was accomplished by the voluntary act of the plaintiff, and as the defendants secured all of the relief which they would have been entitled to on the motion, we do not think that the fact that the usual course in such cases was not pursued is a sufficient ground upon which to order a new trial. In any event, the issue as to damages being clearly separable from the other issues in the case, this court, in order to correct a judgment including them, would not have ordered a new trial of the whole case, but of this issue only. (*Collier* v. *Fitzpatrick*, 19 Mont. 562, 48 Pac. 1103; *Chicago Title & Trust Co.* v. *O'Marr*, 25 Mont. 242, 64 Pac. 506.)

Many other errors are assigned in the brief of appellants,

but we do not think they are of sufficient importance to require special notice.   The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.

Rehearing denied October 12, 1905.